## Raccoon Coal Company v. Faulkner, et al.

(Decided February 2, 1916.)

### Appeal from Perry Circuit Court.

1. Contracts—When Incomplete—Peremptory Instruction.—Where money is paid as part consideration for a lease under an agreement that it is to be returned by the lessor unless the lease as written is approved and signed by the lessor within ten days, and the lease as written, instead of being signed within that time, is materially changed by the lessor, and neither the lease as written nor any other lease is thereafter agreed to and executed by the parties, the lessees paying the money are entitled to a return thereof and it is not error to direct the jury to find in their favor.

2. Contracts—Contracts to Make Lease—Specific Performance.—Where a contract, by which a party agrees to lease certain mines, is informal and not sufficiently definite in its terms to be susceptible of specific performance, and the contract further provides that a formal lease shall thereafter be drawn, and the parties after repeated efforts fail to agree on the terms of the formal lease, specific performance is properly denied.

HOGG & JOHNSON and F. J. EVERSOLE for appellant.

FAULKNER & FAULKNER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, D. D. Faulkner and T. Y. Baird, brought this suit against the Raccoon Coal Company to recover the sum of $1,000.00, which was paid to defendant as part consideration for a lease and which was to be returned to plaintiffs unless the lease as written was approved by defendant's directors and signed by defendants within ten days from the date of the agreement. At the conclusion of the evidence the trial court directed the jury to return a verdict for plaintiffs. Defendant appeals.

The facts are as follows: On February 21, 1914, the Raccoon Coal Company, as party of the first part, and T. Y. Baird, D. D. Faulkner and John Goins, parties of the second part, entered into an agreement by which the first party agreed to lease to the second parties its mines and equipment under certain terms and conditions. Under this agreement the second parties were given until March 2, 1914, to make final arrangements and draw up

the proper lease. On February 28, 1914, Baird and Faulkner telegraphed the defendant that they would take the lease. Subsequently the parties met at Corbin, Kentucky, the coal company being represented by H. B. Jones, an attorney of Pikeville, and the brother of W. M. Jones, the president of the company. H. B. Jones had been requested by his brother to be present and had been given general directions as to what the lease should contain. The meeting took place on March 10, 1914. A formal lease was drawn up. The lease was not then executed, because H. B. Jones, the attorney, did not feel authorized to conclude the matter. A copy of this lease was furnished to plaintiffs and another copy sent to S. A. D. Jones, the vice-president and general manager of the company, who then lived at Douglas, in Perry county.

On the same day the lease was written plaintiffs paid to H. B. Jones the sum of $1,000.00, and received from him the following writing:

"Received of D. D. Faulkner and T. Y. Baird one thousand and No/100 dollars, which is to be placed in the First National Bank of Barbourville, Ky., and which is to become a payment to the second parties by the first parties on goods mentioned in lease bearing even date herewith, as soon as first parties to said lease sign said lease; it being the intention herein for to give the Raccoon Coal Company an opportunity to call a directors' meeting and approve and sign the lease as written, and if they fail to approve and sign same within ten days from the date hereof, then the money herein advanced is to be returned to the parties advancing it.

"This, the 10th day of March, 1914.

"(Signed)

"Raccoon Coal Co.
"By H. B. Jones."

The lease finally agreed on at Corbin on March 10th was not approved and signed by the defendant within ten days, or at any time. The copy which was furnished the defendant's vice-president and general manager was interlined in several places and the contract thereby materially changed. Plaintiffs were unwilling to sign the lease as interlined. On March 24th the parties met at Barbourville, and Mr. W. M. Jones, president of the company, dictated a new lease. He testifies that plaintiffs agreed to this lease and also agreed to meet the rep-

resentatives of the company on or before April 1st and take possession of the leased property. Plaintiffs and their witnesses say that they objected to the provisions of the new lease and never agreed to execute it. After the parties met at Hazard they got into a dispute over the lease and plaintiffs refused to sign it.

The coal company insists that the trial court not only erred in directing a verdict for plaintiffs, but also erred in refusing defendant specific performance of the lease contract. This position is founded on the assumption that the contract of February 21st, and the acceptance of its terms by the telegram of February 28th, bound plaintiffs to take the property, and plaintiffs being bound to take the property, defendant was entitled to keep the $1,000.00, which was paid as part consideration for the lease. The difficulty with this contention is that the contract of February 21st plainly showed that it was not complete in itself, and clearly provided that a formal lease should be drawn up and executed by the parties. Thereafter a formal lease was drawn up and the $1,000.00 paid, with the distinct agreement that it was to be returned to plaintiffs if the lease as written was not approved and signed by the defendant within ten days. Instead of signing the lease as written, the defendant made certain material alterations in the lease which were not satisfactory to plaintiffs. As a matter of fact, neither the lease written at Corbin nor any other lease in lieu thereof was ever executed by the parties. In other words, the minds of the parties never met. It is clear, therefore, that the conditions under which the coal company was entitled, by virtue of the receipt, to retain the money, were never fulfilled. As no formal lease sufficiently definite in its terms to be susceptible of specific performance was ever entered into by the parties, it follows that specific performance was properly denied; and as the conditions under which the defendant was entitled to retain the $1,000.00 were never complied with, it follows that plaintiffs were entitled to a return of the money, and the trial court did not err, therefore, in directing the jury to find for plaintiffs.

Judgment affirmed.